Exhibit 43

# Paul Kelly Counseling

▇▇▇▇▇▇▇▇▇▇, New York, NY ▇▇▇▇

9/12/17

Hon. Denise L. Cote
United States District Judge
United States Courthouse
500 Pearl St.
New York, NY 10007

Dear Judge Cote:

My name is Paul Kelly and I am a Psychotherapist, Licensed Mental Health Counselor, and Certified Sex Addiction Therapist (CSAT) practicing in New York City. I have been working with Anthony Weiner since January 23, 2017. I am writing to offer you information you may find helpful when considering the sentencing of Anthony.

I would like to begin by saying that I am writing with a keen awareness of my responsibility not only as an advocate for Anthony's mental, emotional, and psychological health but also as a mandated reporter of any situation where I feel a minor may be at risk of physical, mental, or emotional harm. As a clinician licensed by the state of New York I have an obligation not only to my clients but also to the public. With both these obligations in mind, and with more than 25 years of experience working with many sex addicts in various capacities, and having worked therapeutically with Anthony more extensively than any of his previous therapists, I would like to state that I believe that Anthony is very unlikely to repeat the offense for which he is before the Court – the Transfer of Obscene Material to a Minor – and, as long as he continues his current course of treatment, is unlikely to relapse into other problematic sexual behavior.

I would like to start with my observation that Anthony has been struggling for some time with sexual compulsivity problems, sometimes referred to as "sex addiction." This disorder encompasses a range of compulsive sexual behaviors, and does not always include physical sexual encounters – in fact, it often does not. In Anthony's case, his negative sexual behavior has revolved around sexually explicit communications with strangers on the internet. For him, communication and affirmation are his goals, not actual physical sexual contact, and the communications he has sought have consistently been with consenting adults. The exchange he had which crossed legal boundaries was an anomaly.

I think it is also important to point out that Anthony's illegal behavior was an anomaly and fell well outside of his typical sexual behavior – even his sexually compulsive behavior - because Anthony does not show any predatory behavior, nor any unusual inclination toward individuals below the age of majority. While he has shown significantly poor judgement and a self-defeating tendency to engage sexual activities that are detrimental to his own best interests, these encounters have always been with consenting adults. His engagement with a person under the age of majority was well outside his general pattern of behavior and is therefore very unlikely to recur.

Anthony's current treatment is comprised of individual therapy once a week, group therapy once a week, 12-Step meetings 4-5 times a week, periodic weekend intensives every 4-6 months, daily check-ins with his therapist, sponsor, therapy group members, or 12-Step sober supports, restriction of his access to pornography and social media websites, and active focus on being of service to his son ▇▇▇ his wife, Huma, and other addicts seeking recovery from sex addiction. He has also taken a job to ensure his gainful

1

employment but more importantly to ensure his sense of purpose and usefulness, and to provide structure to his days. Anthony has shown steady and consistent progress in all these areas even in the most trying of circumstances. Is there more progress to be made? Yes, but I have confidence that with continued work in the manner he has been engaging Anthony will continue to maintain healthy and appropriate social and sexual boundaries.

Having reviewed the Adult Sexual Risk Evaluation and Psychosexual Assessment prepared by Dr. Shoshanna Must, dated September 11, 2017, I generally concur with her findings and would like to underscore several key points that may get somewhat obscured in the volume of information presented in her report. I am also in general agreement with Dr. Must's recommendations and will provide information on the status of Anthony's response to each of them.

First, I think it is very important to underscore, as Dr. Must's clearly states: "There is nothing to suggest in Mr. Weiner's history that he has any history of contact sexual offending behavior." (Pg. 20) And: "There is no other part of Mr. Weiner's known sexual history background to suggest that he has a paraphilia or paraphilic disorder, or history of sexually offending or nuisance behavior." (Pg. 20) And: "Mr. Weiner does not have a history of trying to gain access to children, he does not emotionally identify with children, and his known sexual history is comprised of sexual interactions with adults." (Pg. 27) This is all consistent with my own observations of Anthony's arousal patterns, attractions and behaviors. `

These are very important statements and may seem at odds with what many have come to think of as their image of Anthony Weiner based on what they've heard in the media. But it is important to remember that Anthony's poor reputation in the public eye is for foolish and *self*-destructive behavior he has engaged in with adult women, not minors. The illegal event – the Transfer of Obscene Material to a Minor – was an anomaly and outside Anthony's typical behavior. [REDACTED]

The illegal behavior Anthony did engage in can be most simply stated as his having had sexually explicit interactions over the internet with a 15-year-old. The primary question, for me, as his therapist, and no doubt an important consideration for you, as you consider his sentencing may be virtually the same: How can we reduce the chances that Anthony will do this again, and how can we assure that Anthony will make appropriate reparations/amends for his actions?

To a certain degree, the first part of this question is answered within Dr. Must's assessment based on several Risk Assessments she administered (Static 99-R and Stable 2007). As Dr. Must notes, these tests indicate that if left in the community Anthony would have an "Average" risk of reoffending (pg. 26), but it must be noted and made clear that "average" in this case means only a 7.5% chance (NOT 50/50). This means that his assessments indicate that if left within the community there would be a 92.5% chance that Anthony would NOT have another legal sexual problem (Pg. 26). It is also important to note that the 7.5% chance of reoccurrence is further reduced by the fact that Anthony does not demonstrate any of the "antisocial correlates" that are "the most robust risk factors when considering re-offense concerns." (Pg. 27)

Further reducing Anthony's likelihood of recidivism are several very strong factors in his favor, again as recognized by Dr. Must and with which I concur: Anthony possesses above average intelligence, he is engaged in learning to self-regulate more effectively, he has a sincere motivation to be a productive

2

member of society, he is developing a strong social and recovery supports system, he shows significant fortitude and persistence, and is fully engaged in therapy.

Perhaps one of the most significant factors motivating Anthony to avoid any potentially problematic behaviors is his relationship with his son ▓▓▓. ▓▓▓ is Anthony's only child and Anthony has become acutely aware of how his own behavior impacts this ▓▓▓▓▓▓▓ Anthony is a completely devoted father to ▓▓▓ For the majority of ▓▓▓ young life, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

With all this said, I am in full agreement with Dr. Must's conclusion that: "Mr. Weiner's risk factors . . . can be managed in the community and treated in an outpatient sex-offense-specialized treatment program." (Pg. 28).

Regarding Dr. Must's specific recommendations, here are my thoughts. (Dr. Must's recommendations are in bold. My responses follow each recommendation.)

- **It is recommended that Mr. Weiner enter into a sex-offense-specific treatment program where he can address the risk factors described above in a setting that takes into consideration the offense behavior.**
    - I am in agreement with Dr. Must regarding the benefit of having Anthony participate in a sex-offender-specific program but I am also in agreement with her assessment that: "Mr. Weiner may have a difficult time settling into a sex offense treatment program and will most likely require a lot of patience and psychoeducation to help him identify with other males and not minimize his behavior." [Pg. 28] It is also my experience that sex-offender groups are often comprised of individuals with significantly higher levels of offense behavior than Anthony committed. This can also sometimes present therapeutic obstacles. For this reason I would suggest that the best course of action is to have Anthony continue his current treatment and add to it more elements of the sex-offender model. This strategy is already built into his current treatment plan.

        It should also be noted that effective sex offender treatment programs are very difficult to engage in within the prison system. This is due to a combination of factors including limited space in programs available, time constraint due to sentencing times, and the fundamental limitations of learning skills within a confinement environment that are essentially necessary for when the individual is free within the community. It is much more effective to have an individual improve his social interactions skills within the social environment in which he is likely to live. Anthony is much more likely to have success with a long-term outpatient model than a short-term inpatient or confinement model.

- **It is recommended that Mr. Weiner continue to receive individual and group mental health treatment with his same therapist given the benefit Mr. Weiner reports of both helping him manage his hypersexuality as well as provide a broader support network to help replace the one he had prior to his legal circumstances. It is recommended that this person participate on the treatment team in case conference with probation and treatment if consented by Mr. Weiner.**

- o  I agree with Dr. Must and would be very happy to continue working with Anthony both in individual therapy and group therapy. I am also happy to participate as part of a treatment team and in case conferences with Probation.

- 

- **It is strongly recommended that the entirety of Mr. Weiner's electronic devices be monitored, not just his cell phone.**
  - o  Monitoring software was added to the iPad in Anthony's home immediately upon receiving Dr. Must's recommendation in an earlier version of the report, dated August 18, 2017, and restrictions that meet or exceed those on his iPhone were also installed. The same has been done on his wife's desktop computer at home. These two items plus his personal phone constitute the full array of devices to which Anthony has regular access.

- **Mr. Weiner should not be permitted to access pornography of any kind until completely vetted by his treatment team and probation it is recommended that this be a condition of his supervised release.**
  - o  Though this recommendation may indicate an overabundance of caution on Dr. Must's part, it is reasonable and, I believe, will be helpful in the long run. Since there is no detrimental downside to it, I would fully endorse this recommendation. However, I would like to underscore an important point. Anthony's compulsion is not to pornography, and it is certainly not to interactions with minors. Anthony has an addictive, compulsive tendency toward social/sexual interactions with anonymous adult women via the internet. It is more important to limit Anthony's access to social media sites than pornography itself. While I fully recognize that pornography contributes to distortions in how we view sex and sexual partners, and is generally a significant societal problem, it is not at the heart of Anthony's problematic behavior. That said, I would, as stated above, support restricting and/or "vetting" Anthony's use of pornography.

- **Mr. Weiner's computers should immediately be monitored with computer monitoring software including any smart phones or Internet accessible devices.**
  - o  I'm in full agreement with this, as is Anthony, and this was implemented following the initial draft of the report on August 18, 2017.

- **It is recommended that this report be shared with treatment providers.**
  - o  Anthony and his lawyers shared the report and asked my opinion, much of which has been expressed here above.

I would like to make one final point, and it harkens back to a point I made at the top of this letter. It is related to the balance of my duty to my client and my duty to the general public. In this case, two specific members of that public. One, of course, is the 15-year old young woman to whom Anthony clearly owes amends. █████████████████

█████████████████████████████████████
█████████████████████████████████████
█████████████████████████████████████

4

[redacted] Besides, as has been well documented, treatment programs within the prison system are woefully inadequate both in their availability and, sadly, in there quality.

Little good would be served by removing Anthony from his son and from the therapeutic work he has been so diligently — and successfully — pursuing. Disrupting his recovery process now would actually be more likely to set back his progress, which I can't see as a benefit for anyone.

It is my hope and recommendation that you will consider any number of alternatives to incarceration and that whatever sentence you choose includes ongoing individual therapy, group therapy, and 12-Step recovery work.

Thank you for your consideration.

Respectfully,

*Paul Kelly*

Paul Kelly, MA, LMHC, CSAT